ISAAC T. MURPHY, Plaintiff in Error, *v.* PERRY K. WILSON *et al.*, Defendants in Error.

1. *Practice, Civil — Actions — Trespass — Shooting, injuries caused by — Participants all liable for.*—Where a number of persons met at the same time, and, by mutual understanding, arranged themselves on different sides, and engaged in combat with pistols, and a passer-by was wounded by one of the shots fired, they were held jointly and severally liable to the injured person in an action of trespass; and it was immaterial whether the defendants in the action fired the shot, or whether it was fired by some one else participating in the fray.

2. *Practice, Civil — Actions — Trespass — Affray — Shooting — Allegata and probata.*—In an action of trespass for injuries done plaintiff by shooting, where the averments of the petition were that one of the defendants did the shooting, but all the defendants, together with others, made the assault, and engaged in the commission of the offense, testimony was proper and sufficient to sustain the action if it showed that plaintiff was shot by one of those participating in the affray, although not by one of those named as defendants.

*Error to Fifth District Court.*

*Hall & Oliver,* for plaintiff in error.

I. The plaintiff, in his instruction, sought to recover on a case not set up in his petition. The case made in plaintiff's pleadings and that made in his instructions are totally different. The one charges defendant, and those acting in concert with him, with

injuring plaintiff; the other seeks to recover for an injury committed by those acting against defendant, and actually trying to kill and murder him. (1 Van Sand. Pl. 249; Harris v. Han. & St. Jo. R.R., 37 Mo. 308–9.)

II. A defendant is liable for the acts of others only when they act in concert with him, or under and by his authority; and not when they act in self-defense, for the purpose of protecting themselves from the acts of defendant. (1 Chit. Pl. 117; 4 Dana, 464; 11 Allen, 514; 2 Seld. 405; 2 Hill. on Torts, 297, § 10.)

*McFerran & Vories*, for defendants in error.

I. Defendants were all liable, without regard to who fired the shot that wounded the plaintiff. (Johnson v. Tompkins, 1 Bald. 571; 2 Abb. Nat. Dig. 521, § 3; 1 Cush. 453; 19 Johns. 381, cited in 3 Phil. on Ev. 51, n. 1088; 2 Hill. on Torts, 309–11, § 9 *et seq.*; 2 Greenl. Ev. 579, § 621; 19 Mo. 421; 22 Mo. 373; 27 Mo. 28; Sedg. on Dam. 82–3; 21 Mo. 492; 38 Mo. 270; 1 Chit. Pl. 426; 2 Hill. on Torts, 316; 6 Duer, 382; 9 U. S. Dig. 414, § 15; 1 Van Sand. Pl. 64–5; 41 Mo. 484; 11 Johns. 285; 9 Johns. 294; 4 Den. 464; 2 Hill. on Torts, 315; 10 B. Monr. 422; 1 Hill. on Torts, 61–78, 90, 97; Steph. Nisi Prius, 210–11.)

II. All persons who wrongfully contribute in any manner to the commission of a trespass are responsible as principals, and each is liable to the extent of the injury done. (41 Mo. 484; 2 Abb. Nat. Dig. 521, § 3.)

III. The plaintiffs in error were rioters, and formed a part of a riotous and unlawful assemblage, and, as such, are liable for the act of such assemblage. (Gen. Stat. 1866, § 17, p. 812; 2 Whart. Crim. Law, §§ 2472, 2483; Whart. Am. Law of Homicide, 353.)

IV. Where persons are engaged in a reckless or unlawful act, it makes no difference that an injury was not intended to a third person. (2 Steph. Nisi Prius, 1004, 1006; 22 Mo. 379; 38 Mo. 27; 10 Wend. 654.)

WAGNER, Judge, delivered the opinion of the court.

The petition in this case states that on or about the 29th day of August, 1866, in the county of Caldwell, in the State of Missouri, and in a public street in the town of Breckenridge, the defendants, the Wilsons, together with Reese Tunks, Daniel Stubblefield, Henry Turpin, and others, unlawfully and without leave, and wrongfully, made an assault on the plaintiff; and that Perry K. Wilson, one of the defendants, then and there shot and discharged a pistol loaded with powder and leaden bullets at and against the said plaintiff, and thereby, then and there, with the leaden bullet, struck and wounded the plaintiff; that Humphrey Wilson, Levi Watson, Reese Tunks, Daniel Stubblefield, and Henry Turpin, and other persons unknown to plaintiff, were, at the time of said shooting, present, aiding, abetting, comforting, assisting, and maintaining the said Perry K. in shooting and wounding the plaintiff.

The answer of the defendants denied all the material allegations set out in the petition. The evidence, in substance, shows that a difficulty occurred in the town of Breckenridge at the time mentioned in the petition, between the defendants, the Wilsons, with some others, on one side, and Tunks, Stubblefield, and others, on the other side. There were two engagements, and the parties fought with pistols. In the first encounter the Wilsons drove off their opponents. They then formed in a line across the public street, flourished their pistols, abused the opposite party, and dared them to a renewal of the combat. The other side then rallied, and another fight ensued, which was kept up for several minutes, during which sixty or seventy shots were fired; and in the last contest the plaintiff, whilst peaceably walking along the street, taking no part in the difficulty, was shot and dangerously wounded. The evidence does not disclose, with any certainty, by which side the shot was fired that hit him.

Upon the trial in the Circuit Court the plaintiff asked an instruction, in effect that if the jury believed that at the time mentioned the defendants, or either of them, assaulted Tunks, Stubblefield, and others; and if, from the situation of the street,

the number of persons, or other cause, said assault and firing of pistols was of such a character as to endanger or expose to injury persons passing on the street, and the plaintiff was wounded while passing on the street, without any fault on his part; and if the defendants aided and abetted each other in said assault or assaults and firing of pistols, they are all liable, provided the shot that wounded the plaintiff was then and there fired by the defendants, or by some person or persons aiding and abetting the defendants, *or returning the fire of defendants, or the fire of those aiding and abetting the defendants*, although the wounding of the plaintiff may have been accidental, and not intended by the defendants or either of them, or persons aiding them or returning their fire—they should then find for the plaintiff.

This instruction the court modified by striking out the words italicized, and then gave it. To which action of the court the plaintiff excepted. At the request of the defendants, the court instructed that unless the jury found from the evidence that the defendants, or some one of them, or some other person who was present, with whom defendants were acting in concert, aiding and assisting, shot the plaintiff, they must find for the defendants.

The court further instructed the jury that if they believed from the evidence that the plaintiff was shot by some person engaged in hostile combat against the defendants, and trying to shoot them, or some one of them, they must find for the defendants. To these instructions the plaintiff objected; and, upon his objections being overruled, he took a non-suit, with leave to move to set the same aside; and after an unsuccessful motion to have the same set aside, the cause was removed to the District Court, where the judgment was reversed, and the defendants brought error to this court.

It is contended by the learned counsel for the defendants (plaintiffs in error in this court) that the action of the Circuit Court in striking out that part of the plaintiff's instruction hereinbefore referred to was right, because it sought to recover on a cause of action not made by the pleadings.

This court has heretofore decided that a party can not declare upon one cause of action, and recover judgment upon another

and entirely different cause. Notwithstanding the exceeding liberality of the practice act, we do not think it was intended to apply to such a radical and complete change. When the variance between the allegation in the pleading and the proof is not material, the court may direct the facts to be found according to the evidence, or may order an immediate amendment, without costs. (Gen. Stat. 1865, ch. 168, § 2.)

By section 1 of chapter 168, it is declared that no variance between the allegation in the pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon its merits. Now, the averment in the petition is that the defendants, together with Tunks, Stubblefield, and others, made the assault, and were all engaged in the commission of the offense, though it is alleged that Perry K. Wilson did the shooting.

It is unquestionably a rule of good pleading, under the code, that "every fact which the plaintiff must prove to enable him to maintain his suit, and which the defendant has a right to controvert in his answer, must be distinctly averred; and every such averment must be understood as meaning what it says, and, consequently, is one to be sustained by evidence which corresponds with its meaning."

Whether the pleading in this case can be considered good, will depend greatly on the liability of the defendants. If, as counsel for defendants contend, they can only be held liable for their own immediate acts, or the acts of those who acted in concert with them, then the case does not correspond with the averments in the petition. If, however, the position of the plaintiff's counsel be tenable — that the defendants are the instigators and active promoters of the riot, and that they are therefore responsible for all injury that occurred by the act of any of the participants therein—the petition contains a sufficient allegation, and must be held good.

In general, it may be laid down as a correct proposition that every person is liable for the direct, natural, and probable consequence of his own act. If a person puts in motion a dangerous thing, as letting loose a dangerous animal, and leave to hazard

what may happen, and mischief ensues, he will be regarded as a trespasser, and held answerable. Every one doing an unlawful act is considered as the doer of all that follows. If two persons mutually engage in mortal combat, or fight a duel in the public streets, and a passer-by is hit, though unintentionally, both will be held guilty as principals. As showing the settled law on the subject, where it is sought to charge an individual for the acts of others, it will be well to refer to a few of the more prominent cases.

The case of Scott v. Sheppard (2 W. Black, 892; 3 Wils. 403; S. C. in Sm. Lead. Cas.) is a strong instance of the responsibility of an individual who was the first, though not the immediate, agent in producing an injury. Sheppard threw a lighted squib composed of gunpowder into a market-house, where a large concourse of people were assembled. It fell upon the standing of Yates, and, to prevent injury, it was thrown off his standing across the market, when it fell upon the standing of Willis; from thence, to save the goods of the owner, it was thrown to another part of the market-house; and Ryall, to avert danger, again gave it motion and new direction, and, in so throwing it, it struck the plaintiff in the face, and, bursting, put out one of his eyes. It was decided by the court that Sheppard was answerable in an action of trespass and assault and battery. Dr. Grey, C. J., held that throwing the squib was an unlawful act, and that, whatever mischief followed, the person throwing it was the author of the mischief. All that was done subsequent to the original throwing was a continuation of the first force and first act.

In Vandenburgh v. Truax (4 Den. 464), the defendant having had a quarrel with a boy in the street in a city, took up a pick-axe and followed him into the plaintiff's store, whither he fled; and, in endeavoring to keep out of defendant's reach, the boy ran against and knocked out the faucet from a cask of wine, by means of which a quantity of the wine ran out and was wasted. It was held that the defendant was liable to the plaintiff for damages; that where one does an illegal or mischievous act, which is likely to prove injurious to others, he is answerable for the consequences which may directly and naturally result

from his conduct, though he did not intend to do the particular injury which followed.

The case of Guille v. Swan (19 Johns. 381) was this: Swan sued Guille in a justice's court, in an action of trespass, for entering his close and treading his roots, vegetables, etc., in a garden in the city of New York. The facts were that Guille ascended in a balloon in the vicinity of Swan's garden, and descended in his garden. When he descended his body was hanging out of the car of the balloon in a very perilous situation, and he called a person at work in Swan's field to help him, in a voice audible to the pursuing crowd. After the balloon descended it dragged along over potatoes and radishes, over thirty feet, when Guille was taken out. The balloon was carried to a barn at the farther end of the premises. When the balloon descended, more than two hundred persons broke into Swan's garden, through the fences, and came on his premises, beating down his vegetables and flowers. The damage done by Guille with his balloon was about fifteen dollars, but the crowd did much more. The plaintiff's damages in all amounted to ninety dollars. It was contended before the justice that Guille was answerable only for the damages done by himself, and not for the damages done by the crowd. The justice was of the opinion, and so instructed the jury, that the defendant was answerable for all the damages done to the plaintiff. The jury accordingly found a verdict for him for ninety dollars, on which the judgment was given, and for costs. On error in the Supreme Court, it was argued by the counsel for the plaintiff in error that the injury committed by Guille was involuntary, and that done by the crowd was voluntary, and that, therefore, there was no union of interest; and that, upon the same principle that would render Guille answerable for the acts of the crowd in treading down and destroying the vegetables and flowers of Swan, he would be responsible for a battery or a murder committed on the owner of the premises. But the court, by Ch. J. Spencer, said: " The intent with which an act is done is by no means the test of the liability of a party to an action for trespass. If the act cause the immediate injury, whether it was intentional or unintentional,

trespass is the proper action to redress the wrong. It was so decided, upon a review of all the cases, in Percival v. Hickey (18 Johns. 254). Where an immediate act is done by the co-operation or the joint act of several persons, they are all trespassers, and may be sued jointly or severally; and any one of them is liable for the injury done by all. To render one man liable in trespass for the acts of others, it must appear that they either acted in concert, or that the act of the individual sought to be charged ordinarily and naturally produced the acts of the others." And it was accordingly adjudged that Guille was answerable for the acts of the crowd, and the judgment of the justice was affirmed.

In the case of Thomas v. Winchester (2 Seld. 397) it was declared that a dealer in drugs and medicines who carelessly labels a deadly poison as a harmless medicine, and sends it so labeled into market, is liable to all persons who, without fault on their part, are injured by using it as such medicine in consequence of the false label. The liability of the dealer in such cases arises not out of any contract or direct privity between him and the person so injured, but out of the duty which the law imposes upon him to avoid acts in their nature dangerous to the lives of others. He is liable, therefore, though the poisonous drug with such label may have passed through many intermediate sales before it reached the hands of the persons injured.

It will be seen in the foregoing cases that the injuries received by the plaintiffs were not the necessary consequences of the wrongs done by the defendants. But in every instance the wrong was of such a nature that it might very naturally result in an injury to some other person.

In the case of Vasburgh v. Moak and others (1 Cush. 453), the plaintiff was driving with a one-horse wagon along a public highway, where the defendants and others were playing a game of wicket; and, while so passing, the plaintiff was struck in the pit of the stomach and much injured by the ball which the players were using. At the time of the accident, Hollenback, one of the defendants, whose part in the game was to catch the ball after it had been struck, and to throw it back to the person whose busi-

ness it was to roll it, was stationed in a northeasterly direction from the latter, whose station was at one of the wickets. The plaintiff had passed the wicket a little, and was west of a direct line from Hollenback to the person at the wicket. At this moment Hollenback threw the ball, with an intention to throw it to the person at the wicket; but the ball being wet, it slipped in his hand when he was in the act of throwing it, and was then turned from its intended direction, and struck the plaintiff as already stated. The other defendants were engaged in the game with Hollenback, but they had no other connection with him in the act of throwing the ball.

The defendants requested the court to instruct the jury that if they should be satisfied that Hollenback designed to throw the ball to one of the other players; that it was thrown with such design, and slipped in his hand; that, by accident on his part, he hit the plaintiff; and that the other defendants had nothing to do with the throwing of the ball in this particular instance, although engaged in the general play — then such other defendants would not be responsible for the injury occasioned by the accident.

This instruction was refused, the court holding that if several persons engaged in playing a game of ball in the public highway, and a traveler lawfully passing thereon was accidentally struck by the ball, all persons so engaged were liable in trespass, provided that, from the width of the road, and the number of persons usually passing thereon for the ordinary purposes of travel, the game was of such a character as to be likely to endanger the safety of travelers and passengers, and that the individual by whom the ball was thrown was acting in the usual manner of persons engaged in such game.

Here it will be seen that the doctrine is laid down that there was an association of persons engaged in a common object, and that an injury inflicted by one individual without the intentional concurrence on the part of the others, or even without intention on the part of the individual who inflicted the injury, rendered the whole number engaged jointly liable for the damages sustained by the injured party. They engaged in playing a game of ball on a public highway, where travelers were accustomed to pass and

had a lawful right to pass; and the happening of the event which caused the injury was a contingency which was one of the probable and natural results of their acts.

In the present case the parties were all engaged in violating the law and disturbing the public peace. They showed an utter disregard for the safety of the community and the lives of individuals. In the most public place of a street in a town, where people were passing by, they engaged in an open fight, firing their pistols in every direction. All the participants were guilty, and all responsible for whatever damages flowed from their outrageous acts. The evidence is very clear that defendants induced, brought on, and caused the last encounter, during which the plaintiff was injured; and the wounding of innocent persons on the streets, where sixty or seventy pistol shots were fired by men wrought up to the highest pitch of excitement, was nothing but a probable and natural consequence. But had the defendants not been the aggressors, so far as responsibility is concerned, the case would in no wise be altered. Had the parties all met at the same time, and, by mutual understanding, arranged themselves on different sides, and engaged in conflict, they would have all been jointly and severally liable for all damages that occurred.

It was not material whether the defendants in this action fired the shot that did the mischief, or whether it was fired by some one else participating in the desperate fight. They were all alike amenable, and might be sued either jointly or separately. On either ground—that individuals are liable for the acts of others when those acts are produced by them; or that, when injury results from mutual combat or association, all are principals, and all are liable—I think the action is maintainable, and that the judgment of the District Court should be affirmed.

Affirmed. The other judges concur.