Meade v. C., R. I. & P. R'y Co.

JAMES A. MEADE, by Next Friend, Respondent, v.
CHICAGO, ROCK ISLAND & PACIFIC RAILWAY
COMPANY, Appellant.

Kansas City Court of Appeals, December 14, 1896.

1. **Master and Servant:** LIABILITY OF MASTER: SCOPE OF EMPLOY-
MENT. In order to make the master liable for the negligent and
injurious acts of the servant, such acts must be performed within the
scope of his employment and in furtherance thereof.

2. **Railroads:** MASTER AND SERVANT: STATION AGENT: INJURY TO
"BUM." A station agent charged with the duty of not allowing
"bums" around the station, who, while plaintiff was asleep, poured
benzine on the bench so that it ran down and reached plaintiff's
pants, with the intent of firing said benzine to have some fun with
plaintiff, which benzine is fired, however, by another before the agent
"gets around to it," makes the railroad company liable for plaintiff's
injury, although the agent himself may be jointly liable.

3. **Trespass:** PRINCIPAL AND AGENT: AUTHORITY. In trespass all are
principals and are joint trespassers and the principal is liable for the
acts of the agent performed within the line of his duty whether the
particular act was or was not authorized.

4. ——: CONTRIBUTION: LIABILITY. Where the plaintiff has been
injured by the wrongful act of the defendant, the fact that a third
party by his wrong contributed to the injury does not relieve the
defendant.

5. **Trial Practice:** INSTRUCTIONS TAKEN TOGETHER. All instructions
should be taken in their entirety and should be complete and
harmonious.

6. **Railroads:** WRONGFUL ACT OF STATION AGENT: INSTRUCTION. An
instruction telling the jury that, if the station agent set fire to the
benzine for the purpose of scaring plaintiff or having sport with him,
the defendant would not be liable, is criticised as being too favor-
able to the defendant and calculated to mislead.

7. **Evidence:** DECLARATIONS: RES GESTAE: CUMULATIVE. Declara-
tions made to third parties the day after the injury are too remote to
be considered as res gestae, but in this case such declarations were
only cumulative and can not disturb the judgment.

8. ——: ADMISSIONS: RES GESTAE. Admissions of the agent con-
temporaneously with the commission of the act form part of the
res gestae.

*Appeal from the Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*M. A. Low* and *W. F. Evans* for appellant.

(1) Where the servant, for his own pleasure and amusement, and not to serve his master or to advance his interest, injures another, the master is not liable. *Railroad v. Cooper*, 32 S. W. Rep. 517. (2) The relation of master and servant does not impose on the master liability for any act of the servant, unless the act was done in the performance of the master's business, and for the accomplishment of an object for which the servant was employed. *Railroad v. Cooper*, 32 S. W. Rep. 517. (3) A party is only responsible for the proximate or immediate result of the act in question. Whenever there intervenes the independent act of a third party between the defendant's negligence and the injury sustained, and it effects the result, and is the immediate cause of the injury, the plaintiff can not recover against the original wrongdoer. Weeks D. A. Ing., sec. 115, *et seq.*; Wharton, Neg., sec. 134. (4) Admissions or declarations of an agent are never admissible, unless they are a part of the *res gestae*, or for the purpose of discrediting the evidence of the agent. *McDermot v. Railroad*, 73 Mo. 516; *McDermot v. Railroad*, 87 Mo. 285; *Railroad v. Watson*, 40 Pac. Rep. 778; *Railroad v. Maltsby*, 16 S. E. Rep. 953. (5) An instruction by which the jury are told the facts that plaintiff must establish to entitle him to recover, should contain all the essential facts in the case. An incomplete or a partial statement of them in such an instruction is misleading and erroneous. So, in an action to recover damages from the

master resulting from an act of the servant, the instruction should state that to make the master liable, the servant must havè been acting for the master and in the line of his duty.   *Machine Co. v. Bobbst*, 56 Mo. App. 427; *State v. Brownley*, 53 Mo. App. 126; *Nichols v. Nelson*, 45 Mo. App. 446; *Bestwhistle v. Woodward*, 95 Mo. 113.

*Hamilton, Dudley & Allen* for respondent.

(1) The agent, Keating, in the discharge and performance of his duties as depot agent of the appellant did assault said boy and caused the injury by pouring the oil upon him for the purpose of scaring him out of and keeping him away from the depot.   He was engaged in and about his business and carrying out his purpose as such agent and the appellant is, therefore, liable.   *Haehl v. Railroad*, 119 Mo. 325; *Canfield v. Railroad*, 59 Mo. App. 354; *Vogeli v. Marble & G. Works*, 49 Mo. App. 643; Cooley on Torts, p. 534; 50 Mo. 104.   (2) The acts, declarations, and admissions of an agent made at the time of the performance of the business or duties intrusted to him, or so soon thereafter as to constitute part of the transaction or made contemporaneously, or nearly so, with the main event by which it is alleged that the principal transaction occurred, are admissible as evidence against the principal as constituting part of the *res gestae*.   *Bergeman v. Railroad*, 104 Mo. 77; *Lawson v. Railroad*, 110 Mo. 234; *Harmon v. Stowe*, 57 Mo. 93; *Devlin v. Railroad*, 87 Mo. 545; 1 Rice on Evidence, pp. 227, 228, and cases there cited.   (3) Where a trespass is committed by the cooperation or by the joint act of two or more persons, each is liable for the injury done by all; and all who aid, countenance, command, or advise the commission of a tort by another, or approve it after it

is done for their benefit, are liable. Cooley on Torts, pp. 533, 534; *Cooper v. Johnson*, 81 Mo. 483; *Canifax v. Chapman*, 7 Mo. 175. (4) In trespass principals as well as agents are joint trespassers, and the principal is liable for the acts of the agent performed within the line of his duty whether the particular act was or was not directly authorized. *Humbser v. Scott*, 5 Mo. App. 597; *Railroad v. McKee*, 50 Am. Rep. 102; *Dowell v. Taylor*, 2 Mo. App. 334; *Murphy v. Wilson*, 44 Mo. 313. (5) The master who puts a servant in a place of responsibility is justly held responsible when the servant through the lack of judgment or discretion goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another. Cooley on Torts, p. 538. (6) While the company may not have directed this special act, yet it put a servant of its own selection in a position requiring the exercise of discretionary authority, and by intrusting him with authority, and with the means of doing the injury, has through his agency caused it to be done and is unquestionably liable. Cooley on Torts, p. 534, and cases cited in note 1, p. 535. (7) "The innocent or culpable act of a third person may be the immediate cause of the injury, and still an earlier wrongful act may have contributed so effectually to it as to be regarded as the efficient or at least concurrent or responsible cause." Sutherland on Damages, 64; *Byrne v. Wilson*, 15 Irish, Crim. Law, 332, 342; *Morrison v. Railroad*, 27 Mo. App. 418, 433; *Nagle v. Railroad*, 75 Mo. 661; *Boggs v. Railroad*, 18 Mo. App. 274. (8) Whether the injury is the immediate or remote result of the act of defendant's servants is a question for the jury to determine. *Evans v. Railroad*, 11 Mo. App. 463; *Patton v. Railroad*, 32 Wis. 524. All of the instructions should be construed together. *O'Connell v. Railroad*, 106 Mo. 482; *Shaw v. Dairy*

*Co.*, 56 Mo. App. 521; *Deweese v. The Merameck I. M. Co.*, 54 Mo. App. 476; 128 Mo. 423.

SMITH, P. J.—This is an action to recover damages for personal injuries. The facts of this case, shortly stated, are about these: The plaintiff, about 8 o'clock of the night he received the injuries which he made the basis of this action, went into the waiting room of the defendant's station at Altamont, where he lay down on a bench and went to sleep. About midnight, he suddenly awoke, finding his legs and feet on fire. After the fire had been extinguished, one Keating, who was the defendant's station agent and night operator in charge of the station, was standing near the plaintiff and on plaintiff inquiring, "Who done it?" Keating said, "he did, to scare me (plaintiff) out of the depot," and, "that the superintendent told him not to allow any bums around there." The undisputed evidence was further to the effect that while the plaintiff was asleep, Keating took a bottle of benzine, and poured the contents on the bench on which the plaintiff was sleeping. As to whether Keating set fire to the oil or whether it was done by another, the evidence was conflicting.

Keating testified that he intended to set fire to the benzine, but that someone else did it. He stated that if the benzine got on the plaintiff's legs (about which there is no dispute) "it must have run on his legs." He further testified that his purpose in pouring the benzine on the bench was to have some fun with the plaintiff.

The plaintiff was badly injured. He was disabled for several weeks and suffered much pain in consequence of the injuries he received. There was a trial, which resulted in judgment for the plaintiff and defendant has appealed.

The defendant objects that the trial court erred in giving the first instruction for the plaintiff, which declared that if Keating was the agent of defendant, and in charge of its depot or station at Altamont, Missouri, as station agent or night operator, and that said Keating did, while so in charge of said station, and in the performance of his duties as such agent, unlawfully assault and injure plaintiff by then and there pouring oil or benzine upon and over his foot and leg, whereby the same was burned and injured, they would find for plaintiff, etc.

And in further giving the plaintiff's third, which declared: "that although they may believe from the evidence that the said Keating did not set fire to said benzine, yet if they further believe from the evidence that he poured the same on plaintiff for the purpose of having someone else set it on fire, and that said person did set fire to the same," to find for plaintiff, etc.

If the defendant's agent, while in charge of said station and in the performance of his duties as such station agent, poured benzine upon the legs and feet of the plaintiff, or poured the same on the bench on which plaintiff was sleeping, whereby the clothing on his legs and feet became saturated therewith and the plaintiff's legs and feet were burned in consequence thereof, it is immaterial whether defendant's station agent set fire to the benzine himself, or whether it was done by another, for, in either case, the defendant is liable for the injuries resulting to the plaintiff by the wrongful act of its agent.

The rule now well settled in this state is that the mere fact that the tortious act is committed by the servant, while he is actually employed in the performance of the service he has been employed to render, can not make the master liable. It must not only be done while so

MASTER and servant: liability of master: scope of employment.

employed, but it must pertain to the particular duties of that employment. *Hartman v. Muehlbach*, 64 Mo. App. 565; *Canfield v. Railroad*, 59 Mo. App. 354; *Ridge v. Transfer Co.*, 56 Mo. App. 133; *Jones v. Railroad*, 43 Mo. App. 398; *Farber v. Railroad*, 32 Mo. App. 383; *Snyder v. Railroad*, 60 Mo. App. 419; *Cousins v. Railroad*, 66 Mo. 572; *Sherman v. Railroad*, 72 Mo. 63; *Springer v. Railroad*, 96 Mo. 299; *Garitzen v. Duenckel*, 50 Mo. 104; *Boogher v. Life Ass'n*, 75 Mo. 319.

In Wood on Master and Servant, section 307, it is stated that: "By putting the servant in his place he becomes responsible for all his acts within the line of his employment, even though they are willful and directly antagonistical to his orders. The simplest test is whether they were acts within the scope of his employment, not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof and were such as may be fairly said to have been authorized by him. By authorized is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his orders."

RAILROADS: master and servant: station agent: injury to "bum."

In *Haehl v. Railroad*, 119 Mo. *loc. cit.* 339, it is said: "The principle of *respondeat superior* applies only where what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business and carrying out his purposes. He is then responsible because the thing complained of, although the agency of another, was done by himself; and it matters not whether the injury with which it is sought to charge

him is the result of negligence, unskillful or wrongful conduct, for he must choose fit agents for the transaction of his business. But if the business is done, or is taking care of itself, and his servant not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself and simply to gratify his own feelings of resentment, whether provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is purely the personal wrong of the servant, for which he and he alone is responsible.''

It was the manner which was adopted by the defendant's station agent in performing a duty of his employment which occasioned the plaintiff's injury. The instructions told the jury, in effect, that if the defendant's station agent, in the performance of a duty of his employment, committed the wrong on plaintiff, the defendant was liable for same, and this, it seems to us, accords with the rule declared by the authorities to which we have referred.

But the defendant contends that the plaintiff's said instruction is erroneous in that it authorized the jury to return a verdict for plaintiff, even though they believed from the evidence that the defendant's station agent did not set fire to the benzine, or cause it to be done, or know that it was done by another. It is a sufficient answer to this contention to say that the defendant's station agent poured the benzine on plaintiff's legs and feet, or at least poured it where it ran upon his legs and feet, which is, so far as plaintiff was concerned, the same thing, with an intention to set fire to it himself, and whether he applied the burning match, or someone else did so, can avail defendant nothing against the claim of the plaintiff. It may be

that the person who actually applied the match to the benzine is liable to plaintiff, but can that excuse the defendant? When a trespass is committed by co-operation, or by the joint act of two or more persons, each is liable for the injury done by all and all who aid and abet in the commission thereof are equally liable therefor. In trespass all are principals. Cooley on Torts, 533, 534; *Cooper v. Johnson*, 81 Mo. 483; *Canifax v. Chapman*, 7 Mo. 175. And in trespass principals, as well as agents, are joint trespassers and the principal is liable for the acts of the agent performed within the line of his duty, whether the particular act was or was not directly authorized. *Humbser v. Scott*, 5 Mo. App. 597; *Dowell v. Taylor*, 2 Mo. App. 334; *Murphy v. Wilson*, 44 Mo. 313.

*TRESPASS: principal and agent: authority.*

Among the well established rules of consequential damages is that which declares that "the innocent or the culpable act of a third person may be the immediate cause of the injury and still an earlier wrongful act may have contributed so effectually to it as to be regarded as the efficient, or at least the concurrent and responsible cause." And where the wrongful act of one party affords only the occasion for the illegal or wrongful act of another, it is too remote as to the first wrongdoer, yet this rule is always subject to the qualification "unless the injury thus arising was such as was likely, according to the general experience, to happen from such conduct; or where the misconduct offering such opportunity consists in the omission of some precaution it was the defendant's duty to take against such loss as has occurred." The following are some of the cases which illustrate the application of the principle embodied in the foregoing rules. *Morrison v. Railroad*, 27 Mo. App. 418; *Boggs v. Railroad*, 18 Mo. App. 274; *Nagel v. Railroad*, 75 Mo. 661.

And it has been ruled that where a plaintiff has been injured in his person or property, by the wrongful

*——: contribu-tion: liability.* act or omission of the defendant or through his culpable negligence, the fact that a third party, by his wrong or negligence, contributed to the injury, does not relieve the defendant from liability. *Griggs v. Eckenstrom*, 14 Minn. 81; *Bellman v. Railroad*, 76 Ind. 166; Sutherland on Damages, sec. 40; *Byrne v. Wilson*, 15 Irish, Crim. Law, 332, was where the driver of a stage coach, through negligence, precipitated the coach into a dry canal and a lock keeper thereafter carelessly opened the gates of the canal and the passenger was drowned; and it was said by the judge who delivered the opinion in the case that: "It is true that the subsequent letting of the water into the lock was the other and more proximate cause of her death and that she would not have lost her life but for such subsequent act which was not the necessary consequence of the previous precipitation by the negligence of defendant's servants. But, in my opinion, the defendant is not relieved from liability for his primary neglect, by showing that but for such subsequent act the death would not have ensued." The above excerpt is quoted with approval in *Morrison v. Railroad*, 27 Mo. App., *supra*.

No wrongdoer ought to be allowed to apportion or qualify his wrong, and as a wrong has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss, if that cause was put in operation by his own wrongful act. To entitle a party to exemption, he must show not only that the same loss might have happened, but that it must have happened, if the act complained of had not been done. *Davis v. Garnett*, 5 Bing. 716.

But if it be assumed that the defendant's agent

only placed the benzine where he intended later on to set it on fire, and that without his knowledge or agency another performed that act, yet the prime cause of the injury was the wrongful act of the station agent and but for which the injury would not have happened.

The objection of the defendant to the plaintiff's said third instruction that it is complete within itself and does not therein require the jury to consider any fact stated in the other instructions is not well taken. All TRIAL practice: the instructions given in any case should instructions taken together. be taken in their entirety and when so taken they should be complete and harmonious declarations of the law applicable to the facts the evidence tends to prove. When the said instruction is considered in connection with the others given in the case, it will be seen that the same is not justly subject to the defendant's criticism. *O' Connell v. Railroad*, 106 Mo. 482, and cases therein referred to.

The defendant cites and relies greatly upon a Texas case (*Railroad v. Cooper*, 32 S. W. Rep. 517), but a reference to that case will show that the ruling there made is inapplicable here, for there the plaintiff was in the tender of the locomotive, with the consent of the engineer, and while so being, the fireman, with the consent of the engineer, introduced the end of the nozzle or hose connected with the boiler into the plaintiff's hip pocket and the engineer, by means of the appliances of the machinery, turned upon the plaintiff hot water or steam, which scalded and injured the plaintiff. It was held the railway company was not liable, since, in the performance of the act by which plaintiff was injured, the engineer and fireman were not acting within the scope of their authority and in the discharge of a duty in furtherance of the business of their employer. But here the defendant's station

agent was acting within the scope of his authority and in the discharge of a duty in furtherance of the business of the defendant. The defendant had made it the duty of its said station agent to keep "bums" away from its station, and in consequence of the performance of this duty the plaintiff was injured. If the employees in the Texas case had been required to perform the duty of keeping persons off the locomotive tender, and in the performance of that duty had employed hot water and steam to frighten the plaintiff away, it would have been analogous to this and the plaintiff, no doubt, would have been entitled to recover. The distinction between the cases is therefore apparent.

But notwithstanding what has just been said in respect to the Texas case, the defendant, by the giving by the trial court, of its second instruction, had the full benefit of the rule there declared and even more than that. This instruction declared to the jury that if they believed from the evidence that the defendant's operator, at the time in question, set fire to the benzine referred to by the evidence, for the purpose of scaring the plaintiff, or having some sport with him, then the RAILROADS: defendant would not be liable, and the wrongful act of verdict should be for the defendant. As station agent: instruction. will be perceived, it submitted to the jury the issue of whether the defendant's station agent himself set fire to the benzine, so that, after all, this issue was submitted to the consideration of the jury, and the objection that it was not submitted, or, if so, that there was no evidence to justify it, is eliminated from the controversy. This instruction, it seems to us, was much more favorable to defendant than it should have been. It might have well been that Keating, in the performance of the duty which was required of him in keeping a certain class of persons away from the defendant's station, had concluded to

combine pleasure with business and so to accomplish this double purpose had saturated the plaintiff's clothes with benzine and set fire thereto, in consequence of which his legs and feet were severely burned and injured, and, if so, would anyone insist that in such case the defendant would not be liable for this act of its agent? The instruction by itself was well calculated to mislead the jury.

The declarations made to Steele and Hamilton the next day after the trespass were, we think, too remote to be considered as part of the *res gestae,* and should EVIDENCE: dec- not have been admitted. They were ad- larations: res gestae: cumula- missible for the purpose of discrediting tive. defendant's station agent, but it does not clearly appear on what ground or for what purpose they were admitted, or upon what ground they were objected to. But, however this may be, such declarations were only cumulative and afford no ground for disturbing the judgment.

Nor do we think the question of proximate cause arises in the case. The admissions of the agent as to who perpetrated the wrong and for what purpose, were ——: admissions:. made contemporaneously, or nearly so, res gestae. with the principal act, so as to form part of the *res gestae,* within the rule declared in *Harriman v. Stowe,* 57 Mo. 93. In any view of the case that may be taken, we think that the plaintiff is entitled to recover compensatory damages of the defendant for the injury the plaintiff received in consequence of the wanton and malicious act of defendant's station agent.

The judgment will be affirmed. All concur.