BENJAMIN CURTIS, by next friend, Respondent, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 27, 1903.

Passenger Carriers: EJECTING PASSENGER: POWERS OF BRAKEMAN: RULES: CONSTRUCTION. A brakeman in putting a trespasser off the train must be in the line of his employment before he can bind the carrier; but where he has authority to put persons off the train and does so while the train is in motion, the carrier is liable although the brakeman was expressly prohibited by the carrier's rules from ejecting persons while the train was in motion. (Cases considered.)

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*W. F. Evans, H. C. McDougal* and *Frank P. Sebree* for appellant.

(1) The court committed error in refusing to give the demurrer to the evidence and the peremptory instruction to find for defendant requested at the close of all the evidence, and defendant's instruction No. 3, and in giving plaintiff's instructions submitting the case to the jury. The plaintiff was a trespasser and unlawfully on defendant's train, and the evidence failing to show that the brakeman had authority from defendant to expel trespassers from the train, the plain-

tiff is not entitled to recover, and the case ought not to have been submitted to the jury. Krueger v. Railway, 84 Mo. App. 358; Hartman v. Muehlebach, 64 Mo. App. 565; Farber v. Railway, 116 Mo. 91; Bess v. Railroad, 35 West Va. 492; Railway v. Anderson, 82 Texas 516; Coal Company v. Heeman, 86 Pa. St. 418; Flower v. Railroad, 69 Pa. 210; Railway v. Peterson (Ind. 1895) 42 N. E. 480; s. c., 144 Ind; Sherman v. Railroad, 72 Mo. 62; McGowan v. Railroad, 61 Mo. 528; Farber v. Railroad, 32 Mo. App. 378; 2 Woods Railway Law, sec. 316; 3 Elliott on Railways, sec. 1255.

*W. D. Hamilton* and *Boyd Dudley* for respondent.

(1) If flagman Zent, in the performance of his duties, and within the scope of the authority, kicked plaintiff off the train, or expelled him therefrom while the same was in motion, then defendant is clearly liable, under the law and the evidence in this case. Meade v. Railroad, 68 Mo. App. 92; Heahl v. Railroad, 119 Mo. 325; Canfield v. Railroad, 59 Mo. App. 354; Vogeli v. Marble & Gas Works, 49 Mo. App. 643; Garretzen v. Duenckel, 50 Mo. 104; Brennan v. Santa Fee Receivers, 72 Mo. App. 107; Ephland v. Railroad, 71 Mo. App. 597; s. c. 137 Mo. 187; Krueger v. Railroad, 84 Mo. App. 358; Cooley on Torts, page 534; Wood on Master and Servant (2 Ed.), sec. 307. (2) The master is liable for the negligent, wrongful or wanton acts of his servant, done within the scope of his employment, and the simplest test as to whether or not they were done within the scope of his employment is not whether they were done while prosecuting his master's business, but whether they were done by the servant in furtherance thereof. By "authorized," is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties required of him by the master, though in opposition to his orders. If the act was an incident of the employment, the master is liable, although the manner of doing it was con-

trary to orders. Wood on Master and Servant, sec. 307; Heahl v. Railroad, 119 Mo. 338; Mead v. Railroad, 68 Mo. App. 98.

BROADDUS, J.—This is an action for damages which plaintiff alleged he received by being ejected from defendant's passenger train while the same was in motion on the 7th day of May, 1901, at Cameron, Missouri. The verdict and judgment were for the plaintiff for $810, from which defendant appealed.

The evidence tended to show that while the defendant's west-bound passenger train was standing at the Cameron city depot the plaintiff asked permission to ride on the train to the junction depot about one-fourth of a mile west and that the brakeman, after the train got in motion, kicked him off, when he struck the ladder of the switchpost and was severely injured. Plaintiff's own statement that he was kicked off the train by the brakeman is corroborated by that of two other boys; but the evidence introduced by the defendant tends strongly to contradict them and to show that they were not in the immediate vicinity at the time of the occurrence; and there was evidence also tending to impeach their reputation for veracity. The evidence of the brakeman was, that he told the boy not to get on the train and that he did not kick him off, but that he jumped off while the train was in motion. The following rules of the defendant were in evidence:

"212. Conductors and trainmen must attend to the safety and comfort of passengers lawfully on their trains; protect them against rudeness, threatened violence, abusive or obscene language, or annoyance from intoxicated or quarrelsome persons, and must not permit peddlers, beggars or gamblers to ply their vocation on trains. Persons acting offensively toward passengers, whether provided with a ticket or not, and other persons found upon a train without ticket or pass and refusing to pay fare upon being required to do so

(which requirement must always be made), must be ejected from the train; but strictly in accordance with state law; only such force being used as may be sufficient for removal and in no case with unnecessary violence, harsh language, or display of ill temper, or while train is in motion. Ejection under such circumstances is an act of legal duty, to be performed in a reasonable manner and at a proper place. Persons should not be ejected at any place where bad weather or unseasonable hours of the night might endanger their lives or safety, and the person ejected must not be a child of tender years, of unsound mind, or in such feeble and helpless condition as to be unable to take care of him or herself at the point of ejection.

"Trainmen must not under any circumstances eject a tramp, or tramps, or other trespassers upon the train while it is in motion, nor without first conferring with the conductor, who may delegate special authority to trainmen.

"(a) Reports of all cases of ejectments, whether of passengers or others and whether from train or from one car to another, as well as of all controversies between conductors and passengers in which force is employed whether injury is claimed or not, must be promptly made as required by rule 407. Ejectments should be reported on form 479 and other controversies by letter giving full details. In all cases particular care should be taken to secure the names and addresses of all passengers or other witnesses in such occurrences.

"260. A flagman or brakeman (or the conductor) must, while the train is in motion, remain on the rear car of every train.

"261.. It shall be the sole duty of the flagman of all passenger trains while on the main track, either running or standing, except at division or terminal points where the train is properly protected by yard rules or otherwise, to protect the rear of his train in

the manner provided in the rules; and the rear brakeman, when a regular flagman is not employed, is required to perform this duty, with which nothing must be allowed to interfere.''

At the close of the evidence the defendant asked the court to instruct the jury to find for the defendant, which the court refused: The contention of the defendant is that the plaintiff failed to show that the act of the brakeman in putting him off the train was in the line of his employment, and therefore he was not entitled to recover; and plaintiff concedes that unless the evidence so showed, he was not entitled to a verdict. Such is the law. Krueger v. Railroad, 84 Mo. App. 358; Hartman v. Muehlebach, 64 Mo. App. 565; Farber v. Railroad, 116 Mo. 91. It is also well-settled law that if the brakeman, while in the performance of his duties and within the scope of his authority, put plaintiff off the train while it was in motion, the defendant is liable. Meade v. Railroad, 68 Mo. App. 92; Haehl v. Railroad, 119 Mo. 325, and other cases cited in respondent's brief.

Rule 212 makes it the ''legal duty'' of conductors and trainmen to eject persons found upon a train without ticket or pass and refusing to pay fare; this duty to be performed in a reasonable manner and at a proper place. And ''trainmen must not under any circumstances eject a tramp or tramps or other trespassers upon a train while it is in motion, nor without first conferring with the conductor, who may delegate special authority to trainmen.'' The defendant's construction of this rule is, that no trainman has the authority under the rule to eject a passenger without the consent of the conductor, and in doing so he acts outside of the line of his employment, and that in no event is he authorized to eject a passenger while the train is in motion. The plaintiff admits that the rule requires that before a brakeman can eject a passenger he must confer with the conductor, and that in no instance is he authorized

to eject one while the train is in motion, but that the act notwithstanding is in the course of his employment, although in excess of his authority, for which the carrier is responsible.

Meade v. Railway, 68 Mo. App. 92, was where a station agent was charged with the duty of not allowing "bums" around the station. The station agent, while plaintiff was asleep on a bench, poured benzine on the bench so that it would reach plaintiff's clothes with the intent of firing the benzine for sport. The benzine, however, was fired by another and plaintiff was severely burned. The defendant was held liable. The court recognized the rule in this State, "that the mere fact that the tortious act is committed by the servant, while he is actually engaged in the performance of the service he has been employed to render, can not make the master liable. It must not only be done while so employed, but it must pertain to the particular duties of that employment." Citing Hartman v. Muehlebach, 64 Mo. App. 565. But the court held the case came within the rule as stated in Wood on Master and Servant, section 307, that the master, "by putting the servant in his place becomes responsible for all his acts within the line of his employment, even though they are willful and directly antagonistic to his orders."

We think this case clearly falls within the rule just quoted. It was a part of the duty of a brakeman to put a trespasser off the train and in so doing he was in the course of his employment; and the fact that he exceeded his authority, or acted contrary to the rule which forbade him from ejecting a passenger from a moving train, did not excuse the defendant. Haehl v. Railroad, 119 Mo. 325. A principal is liable for the neglect, fraud or other wrongful act of his agent in the course of his employment, though the principal did not authorize the specific act. Garretzen v. Duenckel, 50 Mo. 104.

For the reasons given the cause is affirmed. All concur.