[No. 14839. *En Banc.* November 20, 1918.]

## ELIZABETH E. MITCHELL *et al., Respondents,* v. E. J. HUGHES *et al., Appellants.*[1]

ARREST (6)—AUTHORITY TO ARREST WITHOUT WARRANT. An officer may not on information or suspicion make an arrest for a misdemeanor without a warrant, unless the misdemeanor was actually committed in his presence.

SHERIFFS AND CONSTABLES—CIVIL LIABILITY FOR NEGLIGENCE—ATTEMPT TO ARREST WITHOUT WARRANT. It is unlawful for officers to combine to stop travelers on the highway in an attempt to find and arrest without warrant some person transporting liquors in violation of the prohibition law.

DAMAGES (9—11) — GROUNDS — PROXIMATE OR REMOTE CONSEQUENCES—SHOOTING IN CONSPIRACY FOR UNLAWFUL ARREST. Where an innocent traveler on the highway was shot by one of a party of officers who had unlawfully combined to stop travelers in an attempt to find and arrest without warrant some person violating the prohibition law, the unlawful combination was the proximate cause of the injury, whether the shooting was wanton or not; and it is immaterial that the shooting was not agreed upon by the conspirators in advance.

CONSPIRACY—CIVIL LIABILITY—JOINT TORT FEASORS. Where two or more persons enter into an unlawful conspiracy each is responsible for any act done by either in furtherance of the common design, and it is immaterial that the act was the result of a sudden impulse, when it followed in natural sequence in continuous succession of the events.

FALSE IMPRISONMENT (4)—CIVIL LIABILITY—DEFENSES. It is no defense to an action for unlawful conspiracy by officers to stop travelers on the highway to make arrest for misdemeanor without warrant, that plaintiffs exceeded the speed limit in attempting to escape from supposed highwaymen.

INTOXICATING LIQUORS (29, 30) — REGULATION — TRANSPORTATION AND POSSESSION. The possession of less than a pint of whiskey in an automobile is not necessarily unlawful, especially when knowledge of its presence is not shown.

FALSE IMPRISONMENT (4)—ARREST WITHOUT WARRANT—CIVIL LIABILITY—DEFENSES. Neither the good intentions of an officer nor the

[1]Reported in 176 Pac. 26.

advice of his attorney is a defense to a civil action for damages for making an unwarranted arrest for misdemeanor without warrant.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for King county, French, J., entered January 14, 1918, upon findings in favor of the plaintiffs, in an action in tort, tried to the court. Affirmed.

*Daniel Gaby* and *Bradford & Egan,* for appellants.
*Charles S. Gleason* and *E. P. Dole,* for respondents.

TOLMAN, J.—This action was brought by respondents, who are husband and wife, to recover for personal injuries received by the respondent wife on or about the 3d day of December, 1916.

The facts admitted or fairly established by the evidence are substantially as follows: The respondent wife was employed in Seattle, her husband being employed near Renton, and their child living with its grandmother in Maple Valley, all in King county, Washington. On the date mentioned, Charles McCoy, who was a friend of the family and who lived in Maple Valley, informed the respondent Elizabeth E. Mitchell that he intended to drive that night in his automobile from Renton to Maple Valley, and offered to take her to Maple Valley to see her baby, which invitation she accepted. They left the home of McCoy's parents in Renton about midnight and started to drive to Maple Valley, some ten or twelve miles distant.

At the time, the appellant E. J. Hughes was mayor of Renton and a deputy sheriff of King county; the appellant John Stewart was night watchman of Renton; and the appellant John Flynn was a private citizen, but had formerly been an officer of Renton.

It had been reported on that day to the appellant Hughes that an automobile load of intoxicating liquors

being transported from Kent to Issaquah would pass through Renton that night between eleven and two o'clock, and under directions from Hughes, Stewart, Flynn and the other defendants in the case below, who have not appealed, assembled on a public bridge over Cedar river, in Renton, for the purpose of stopping and searching any automobile suspected of containing intoxicating liquor, and if such liquor should be found, of taking the persons then in possession of it into custody and having them prosecuted.

Before assembling on the bridge for the purposes stated, the appellant Hughes asked the advice of a lawyer, who had been for six terms city attorney of Renton and a member of the legislature, and was advised by him to the effect that, if an automobile or automobiles stopped at the request of the officers, they, the officers, might search it, and if they found liquor in unlawful quantities, they might take into custody the persons having the possession of it; but upon no account to use any force or violence.

The appellant Hughes stationed himself a short distance from the bridge in order to watch automobiles going toward the bridge, and to give a signal by whistle to the officers on the bridge to stop any such automobile which he might suspect of containing intoxicating liquor. None of the persons so acting were armed with any warrant against any person whomsoever.

As the automobile in which McCoy and respondent Elizabeth E. Mitchell were riding approached the bridge, the appellant Hughes gave to the officers on the bridge the appointed signal to stop them, and two of the officers started toward the automobile, displaying a flashlight, and one or both of them shouted an order to stop. They were not in uniform, and did

not display any badge nor announce that they were officers of the law, or what their purpose was. Mrs. Mitchell had never known any of them, and Mr. McCoy, while he had known most of them, testifies that he did not recognize them in the darkness. Both McCoy and Mrs. Mitchell testified that they believed it was a holdup.

When the first two officers stepped toward the automobile and gave the order to stop, the driver, McCoy, instead of stopping, speeded up the automobile to escape, as he testified, the supposed highwaymen. As the automobile passed the first two officers, it was met by two more officers, one of whom had a red light, with which he attempted to flag the automobile. But the driver did not stop, and passed so close to the man with the red lantern as to nearly run him down. At about that time, one of the officers, Dalehart, who was one of the first officers to meet the car and give the order to stop, began running after it, shouting "stop," and fired four or five shots at the automobile from a thirty-eight caliber revolver, intending, as he testifies, to hit the tire of the automobile, cause it to deflate, and impede the progress of the car so that it would stop, or might be overtaken. At about the time the shots were fired, the automobile passed down the incline at the further end of the bridge, and two of the shots passed through the upper part of the automobile, one striking McCoy in the back, inflicting only a nominal injury, and the other bullet struck Mrs. Mitchell a little below her right shoulder blade, passed in an upward direction through her body, and out at the side of her throat. McCoy drove to a nearby house, reported a holdup, that the lady with him had been shot, and then, as she was unconscious, he hastened back and took her to the Renton hospital.

The trial court found:

"The defendants Hughes, Stewart, Flynn and Dale-hart concerted and assembled together for the common purpose and with the joint intent of stopping at night, on a public highway and without a warrant, any automobile which they suspected of containing intoxicating liquor being conveyed in violation of law, and if such liquor should be found, of prosecuting the person or persons in possession thereof, and at the time of the firing of said shots were stationed as aforesaid and were engaged in said common purpose. Although the firing of said shots was not intended or contemplated by any one except Dalehart, they were fired by him in pursuance of the aforesaid common purpose and joint intent, namely, the stopping of said automobile as aforesaid."

Judgment was entered in favor of the respondents and against the appellants and the defendant Peter Dalehart for the sum of $4,000, from which judgment this appeal is taken.

It appears to be admitted that the appellants combined to wait upon the bridge or highway and intercept and stop, or attempt to stop, travelers thereon for the purpose of finding some person in the act of violating the law; and it becomes necessary to inquire first whether this was an unlawful act. We know of no law in force in this state which will justify these acts. No statute exists which authorizes any such action without a warrant, and we think no court has held that such facts justify an arrest, or an attempted arrest, at common law without a warrant. The rule covering an arrest for a misdemeanor without a warrant is well stated in the following quotation:

"Although the defendant seeks to justify his conduct on the ground that he was an officer making a legal arrest and using no more force than was necessary, the law is well settled that even an officer may not arrest for a misdemeanor without a warrant on

information or suspicion, unless the misdemeanor was actually committed in his presence." *Caffinni v. Hermann,* 112 Me. 282, 91 Atl. 1009.

We think it follows, then, that the appellants, no matter how laudable their intent or how justifiable their motive, combined to do an unlawful act.

But they contend that, even so, the act which they combined to do was not the proximate cause of the injury complained of, and cite an extract from the opinion of the court in *Milwaukee & St. Paul R. Co. v. Kellogg,* 94 U. S. 469:

"But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

What is meant by "wanton wrong," as that expression is used in the citation given above? Webster's New International Dictionary defines "wanton" as "Reckless; heedless; malicious; as, *wanton* mischief." And Bouvier's Law Dictionary defines "wantonly" as, "Done in licentious spirit, perversely, recklessly, without regard to propriety or the rights of others; careless of consequences, and yet without settled malice."

While the acts of appellants might not be wanton against a person actually found violating the law, yet, as against the respondent, who was peacefully and lawfully upon the public highway, were not the acts complained of reckless, heedless and done without regard to her rights? Without attempting a definite answer to that question, because unnecessary to the decision of this case, it would yet seem that, in law, and as applied to the rights of the respondent, the acts

complained of might well be held to be wanton. Whether wanton or not, the going upon the highway and unlawfully attempting to stop the respondent in this case appears to be the proximate cause of the injury which she received.

But, say the appellants, the shooting was not agreed upon in advance; in fact, they had been advised not to use any violence; and the appellant Hughes had specifically warned all the others to use no force or violence; and that the shooting was caused by some wild impulse in the mind of the defendant Dalehart, who fired the shot.

In the language of the United States supreme court, in the case of *Milwaukee & St. Paul R. Co. v. Kellogg, supra,* which was cited and relied upon by the appellants, from which we have already quoted, will be found the answer to this proposition:

"The true rule is, that what is the proximate cause of the injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep. 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?"

Again, the court says in that case:

"We do not say that even the natural and probable consequences of a wrongful act or omission are in all

cases to be chargeable to the misfeasance or non-feasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.''

And again:

''In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of the jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies . . .''

Was not Dalehart's impulse to shoot born of the refusal of the driver to stop the automobile? Was not that refusal to stop the result of the unlawful command? Who will say that, if the appellants had not combined to intercept and stop the respondent and acted in pursuance thereof, there would have been any shooting? How can it be found that the impulse to shoot was a new and independent agency, when it followed as a natural sequence the failure to obey the unlawful demand to stop? ''Was there an unbroken connection between the wrongful act and the injury?'' ''Did the facts constitute a continuous succession of events, so linked together as to make a natural whole?'' Was there any other independent intervening cause? The trial court saw none; we can see none; and the text books and text writers generally sustain this view. In such cases, so far as can be found in the

reports, it has universally been held that the original wrongful act was the proximate cause of the injury.

"Where two or more are engaged in an unlawful enterprise, each is individually responsible for all injuries committed in its prosecution and this, although the specific injury was done by one of the parties alone. Here the liability of the other is founded upon the concert of action." 38 Cyc. 487.

"While one who suffers from a conspiracy forbidden by the criminal law may maintain a civil action for damages caused by the parties to the combination, it is not essential to civil liability for a consummated conspiracy to do an unlawful act that the means resorted to to effect the purpose should be criminal or that the act should be criminal. It is sufficient if it be to commit an act wrongful because of its affording a ground of action, either civilly or criminally." 12 C. J. 581.

And on page 610:

"Where two or more persons enter into a conspiracy, any act done by either in furtherance of the common design and in accordance with the general plan becomes the act of all, and each conspirator is responsible for such act. This is true even though the results were not specifically intended or the means specifically agreed on. Every conspirator is liable for all overt acts illegally committed in pursuance of the conspiracy and for the consequent loss whether he was an active participant or not . . ."

See, also, *Kirkwood v. Miller*, 5 Sneed (Tenn.) 455, 73 Am. Dec. 134; *Daingerfield v. Thompson*, 33 Gratt. (Va.) 136, 36 Am. Rep. 783; *Murphy v. Wilson*, 44 Mo. 313, 100 Am. Dec. 290.

And this court in *Abb v. Northern Pac. R. Co.*, 28 Wash. 428, 69 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293, has said:

"It is, and has long been, a generally recognized rule that there is no line of separation between the

liability of joint tort feasors. The tort is a thing integral and indivisible, and any claim for injuries arising therefrom runs through and embraces every part of the tort. The liability of one cannot be carried into any portion of the joint tort that is not followed by an equal liability of the other tort feasors. Each is liable for the whole, and the injured party may pursue one separately, or he may pursue all jointly, or any number jointly less than the whole number.''

The appellants contend that the respondent was violating the speed laws of the state and city, and the state and city laws with reference to the possession of liquor. But we find nothing in these contentions. The evidence shows that the automobile in which the respondent was a passenger was traveling at about fifteen miles per hour until intercepted by the appellants. And in view of the circumstances of being unlawfully intercepted and ordered to stop by unknown men displaying nothing to indicate that they were officers of the law, at midnight and on a public highway, we are unwilling to say that it was unlawful to increase the speed for the purpose of escaping from supposed highwaymen. In any event, such increase of speed, even if unlawful, occurred only after the unlawful attempt by the appellants to stop the respondent.

Nor was the possession of less than a pint of whiskey, which was found in the automobile, necessarily unlawful, especially as respondent is not shown to have known that the whiskey was in the automobile.

While giving the fullest effect to the acknowledged and admitted fact that the appellants were in good faith intending to do only their duty, and recognizing that, if they had in fact intercepted and stopped no one except some person engaged unlawfully in transporting liquor, their actions would have been approved by all right thinking citizens; yet, when an officer of

the law, without a warrant, and upon general suspicion only, at midnight, without making known his official character, attempts to intercept and stop a peaceful citizen lawfully pursuing his way upon the public highway, and personal injuries result therefrom, he acts at his own peril, and the good intention of the officer is no defense. Nor did the advice given by the city attorney justify the act. For, as we read the evidence, that advice did not contemplate the stopping of any traveler except one engaged in the act of unlawfully transporting intoxicating liquors. This falls far short of justification.

No question is raised here as to the amount of the recovery, and we have not considered that feature of the case. Much as we regret that the burden of compensating the respondent must fall upon men who intended to do no wrong, we are yet constrained by the law as we find it to affirm the judgment of the trial court.

Judgment affirmed.

MAIN, C. J., PARKER, MITCHELL, MACKINTOSH, CHADWICK, and MOUNT, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the conclusion reached by the majority. A careful reading of the record has convinced me that the evidence does not justify the finding of the trial court, to the effect that the defendants Hughes, Stewart, Flynn, and Dalehart concerted and assembled together for the common purpose and with the joint intent of stopping at night, on a public highway and without a warrant, any automobiles which they suspected of containing intoxicating liquor being conveyed in violation of law. On the contrary, I think the evidence clearly demonstrates that their purpose was merely to

signal suspected automobiles to stop, without any intent to enforce a stopping if the driver of the automobile refused to obey the signal.

This being their purpose and intent, I am unable to conclude that appellants were engaged in an unlawful enterprise. In this state it is an offense against the laws to transport liquor on the highways in quantities in excess of a limited amount. These officers, having information that such an offense was being perpetrated, owed a duty to intercept the perpetrators. If they caught the perpetrators in the commission of the act they could lawfully arrest them, although they had no warrant of arrest. Under our statutes, as at the common law, an officer may arrest, without a warrant, an offender caught in the commission of an offense, even though the offense be a misdemeanor.

I need not argue that, when two or more persons are acting lawfully together in the furtherance of a common lawful purpose, one is not liable for an assault committed by another, if committed without his concurrence, although committed in furtherance of the common purpose. This is horn-book law.

Since, therefore, I can find no unlawful intent or purpose on the part of the appellants, and can find no participation in the excessive unlawful act resulting in the injury to the respondents, I can but conclude that the recovery permitted to stand is contrary to the rules governing in such cases. I think the judgment should be reversed.

Holcomb, J. (concurring)—I disagree with the restrictive statement of the law of arrest as pronounced in the majority opinion. It is the law, as stated by Judge Fullerton in his dissent, that the "officers, having information that an offense was being perpetrated, owed a duty to intercept the perpetrators. If they

caught the perpetrators in the commission of the act, they could lawfully arrest them, although they had no warrant of arrest. Under our statutes, as at the common law, an officer may arrest, without a warrant, an offender caught in the commission of an offense, even though the offense be a misdemeanor.''

But neither does this statement cover the ground fully.

''While an officer may arrest without a warrant under certain circumstances, as already seen, he may not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to avoid mistakes. The reasonable and probable grounds that will justify an officer in arresting without a warrant one whom he suspects of felony must be such as would actuate a reasonable man acting in good faith. The rule is substantially the same as that in regard to a probable cause in actions for malicious prosecution, and there is no difference in its application between arrests for felonies and arrests for misdemeanors. The necessary elements of the grounds of suspicion are that the officer acts upon a belief in the person's guilt, based upon facts or circumstances within the officer's own knowledge, or upon information imparted to him by reliable and credible third persons, provided there are no circumstances known to the officer sufficient to materially impeach the information received. . . . An arrest without a warrant is illegal when it is made upon mere suspicion or belief, unsupported by facts, circumstances, or credible information calculated to produce such suspicion or belief.'' 5 C. J. 416.

In this case, none of these officers, nor the acting officer or private citizen, took any precautions to avoid mistakes in arresting innocent persons. They had no foundation for belief that the persons intercepted were the guilty persons, and they took no precautions, such as wearing uniforms, badges or otherwise, to give

notice of their official character to any unknown persons they might intercept and arrest without warrant, upon their information. Defendant Dalehart, the officer who fired the shots and who has not appealed from the judgment below, certainly could hardly justify his mistaken act.

The trial court found that Dalehart, together with Hughes, Stewart and Flynn, "concerted and assembled together for the common purpose and with the joint intent of stopping at night, on a public highway and without a warrant, any automobile which they suspected of containing intoxicating liquor being conveyed in violation of law, and if such liquor should be found," etc. This finding, it seems to me, is justified by the facts, and merely puts all the parties upon the same ground as would be private citizens so engaged, for their joint intent of stopping at night, on a public highway and without a warrant, any automobile which they suspected of containing intoxicating liquor being conveyed in violation of law, was unlawful and unjustifiable. The assault and injury happened in consequence thereof and in pursuance of their joint purpose and common intent to stop any such suspected automobile, and resulted in the joint or common commission of the tort and damage.

The facts being so found and being supported by the record, the judgment appealed from was proper. I therefore concur in the result for the foregoing reasons.