[No. 16658. Department Two. January 4, 1922.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED GIBBONS, *Appellant*.[1]

INTOXICATING LIQUORS (6)—PROHIBITION—UNLAWFUL POSSESSION STATUTES—EIGHTEENTH AMENDMENT. Initiative measure No. 3, as amended by Laws 1917, p. 60, § 11, providing that it shall be unlawful for any person to have in his possession any intoxicating liquor is not nugatory as in conflict with the Federal statute (41 Stat. L., p. 317, § 33) declaring "it shall not be unlawful to possess liquors in one's private dwelling"; inasmuch as the state statute covers the offense of possession away from one's dwelling, and is not superseded by the national law except in so far as it is in conflict therewith.

STATUTES (33-36)—AMENDMENT—TIME FOR—"ENACTMENT" OF STATUTE—CONSTRUCTION. The initiative and referendum provision of the constitution (Const., Amendt. 7) prohibiting the amendment of a law approved by a majority of the electors voting thereon "within a period of two years following such enactment," contemplates the time of its complete enactment in a legal sense; accordingly, a provision of the act itself postponing the time of its taking effect to a later date would not defeat the power of the legislature to amend the act at any time after the expiration of two years from its proclamation by the governor.

[1]Reported in 203 Pac. 390.

CRIMINAL LAW (57)—COMPLAINT—ABANDONMENT — NEW COMPLAINT CHARGING HIGHER OFFENSE—RIGHTS OF ACCUSED—JURISDICTION. The abandonment of a prosecution instituted by a prosecuting attorney in a justice court does not militate against his power to file a new complaint charging a higher offense to be tried by the justice as a committing magistrate and thereafter proceed upon proper information filed in the superior court to a trial of the accused for a higher offense of which the latter court alone has jurisdiction.

INTOXICATING LIQUORS (30, 49)—UNLAWFUL POSSESSION—PRIOR CONVICTIONS—EVIDENCE—ADMISSIBILITY. Laws 1917, p. 61, § 15, amending initiative measure No. 3, increasing the punishment for a second violation of the liquor prohibition law, and declaring that a certified record of conviction "shall be sufficient evidence and proof of such previous conviction," is not unconstitutional as an attempt to make such certified record conclusive proof, where it is merely introduced as an evidentiary fact, which the jury are free to weigh as such.

ARREST (6)—ON CRIMINAL CHARGE—AUTHORITY TO ARREST WITHOUT WARRANT. The sheriff has no authority to arrest without warrant one who was not disturbing the peace, and was not suspected of committing a felony, where the sheriff had no actual knowledge that the party arrested was committing the misdemeanor of unlawfully having possession of intoxicating liquor.

INTOXICATING LIQUORS (53)—SEIZURES—VALIDITY—AUTHORITY IN ABSENCE OF SEARCH WARRANT. The seizure without any search warrant of intoxicating liquor in the possession of a person, being in violation of the Federal (amendments 4, 5) and state (art. 1, §§ 7, 9) constitutions, such liquor cannot be produced in evidence against one prosecuted on a charge of having intoxicating liquor in his possession, where the defendant was unlawfully arrested and his automobile seized without any warrant and possession of the liquor was not actually disclosed until examination of defendant's vehicle under a search warrant issued subsequent to his arrest.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered January 18, 1921, upon a trial and conviction of the unlawful possession of intoxicating liquor. Reversed.

*John T. Mulligan,* for appellant.
*W. O. Miller,* for respondent.

PARKER, C. J.—Upon an information filed in the superior court for Adams county by the prosecuting attorney of that county, the defendant, Gibbons, was by a jury found guilty of the offense of unlawfully having in his possession in that county, on December 24, 1920, intoxicating liquor, to wit, twelve quarts of whiskey; the jury further finding that, on November 6, 1918, defendant had been duly convicted in the superior court for Spokane county of the offense of unlawfully having an excess quantity of liquor in his possession, all as charged in the information filed against him in this case. The trial court rendered judgment against the defendant upon these findings, adjudging him guilty of the aggravated offense. From this judgment, he has appealed to this court.

The words, ''excess quantity of liquor,'' found in the record of the former conviction of the appellant, introduced in evidence in this case, and also found in the information and verdict in this case, indicate that his former conviction was under § 22 of initiative measure No. 3, adopted by a vote of the people in November, 1914, reading as follows:

''It shall be unlawful for any person to have in his possession more than one-half gallon or two quarts of intoxicating liquor other than beer, or more than twelve quarts or twenty-four pints of beer: . . .'' Laws of 1915, p. 14; Rem. Code, § 6262-22.

The conviction of the defendant in this case was under §§ 11 and 15, ch. 19, pp. 60 and 61, Laws of 1917, which are amendatory to initiative measure No. 3 of 1914; which sections, in so far as we need here notice them, read as follows:

''Sec. 11. That said initiative measure No. 3 be amended by adding thereto a new section to be known as section 17h and to read as follows:

''Section 17h. It shall be unlawful for any person

. . . to have in his possession any intoxicating liquor other than alcohol. . . .

"Sec. 15.   That section 32 of said initiative measure No. 3 be amended to read as follows:

"Section 32.   Every person convicted the second time of a violation of any provision of this act, for which the punishment is not specifically prescribed, shall be punished by a fine of not less than two hundred nor more than five hundred dollars and by imprisonment in the county jail for not less than thirty days nor more than six months and every person convicted the third time of a violation of any provision of this act shall, for such third and each subsequent conviction, be punished by imprisonment in the penitentiary for not less than one nor more than five years.   Every prosecuting attorney, and every justice of the peace, having knowledge of any previous conviction or convictions of any person accused of violating this act, shall in preparing a complaint, information or indictment, for subsequent offenses, allege such previous conviction or convictions therein, and a certified transcript from the docket of any justice of the peace, or a copy of the record of any court of record, certified by the clerk thereof under the seal of the court, shall be sufficient evidence and proof of such previous conviction or convictions."

It is first contended in appellant's behalf that § 11 of the act of 1917, above quoted, which is amendatory to initiative measure No. 3 of 1914, is rendered void and of no effect by the passage of the National prohibition law (the so-called Volstead act), which reads in part as follows:

". . . it shall not be unlawful to possess liquors in one's private dwelling . . ."   41 Stat. L., p. 317, § 33.

The argument is that our state law is in conflict with the Federal law touching the possession of liquor in one's dwelling; that is, that the ban of our law rests upon liquor possessed in one's dwelling as well as possessed elsewhere; while the Federal law in terms makes

possession in one's dwelling lawful; and that therefore the state law must be held of no effect touching the question of unlawful possession of intoxicating liquor. We think that we are not here called upon to enter upon the interesting inquiry as to when, and under what circumstances, if any, state and Federal laws, passed in pursuance of the state and Federal legislative "concurrent power to enforce" the eighteenth amendment to the Federal constitution, may become so in conflict that one of such laws, or some part thereof, must give way to the other. In this case there is no attempt to enforce our state law so as to come in conflict with the Federal law with relation to the possession of liquor in "one's private dwelling." Even conceding here, for the purpose of argument, that as to such possession there is such a conflict as to make one law superior in that respect to the other, the possession of the liquor charged against appellant in this case was concededly not in his private dwelling. We think it is plain that, in so far as our state law is sought to be enforced in this case, it is in no event in conflict with the Federal law. It is conceded by counsel for appellant that:

". . . the state prohibition law has not been abrogated, suspended or superseded by the National prohibition act, except in so far as the state prohibition law is in conflict with the National prohibition act."

Our late decisions in *State v. Turner,* 115 Wash. 170, 196 Pac. 638, and *State v. Woods,* 116 Wash. 140, 198 Pac. 737, render it plain that such is the settled law of this state.

It is contended that the amendatory act of 1917, above quoted from, and under which this prosecution is being waged, is void and of no effect because it was enacted by the legislature in violation of the provision of the initiative and referendum provision of the seventh amendment to our constitution, reading as follows:

"(c) . . . No act, law, or bill approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment."

Initiative measure No. 3 was adopted by the people at the November election of 1914, and such adoption evidenced by proclamation of the Governor on December 5, 1914. The concluding section of that measure and act reads as follows:

"Sec. 33. This act shall take effect and be in full force and effect from and after the first day of January, 1916." Laws of 1915, p. 17.

The amendatory act of 1917, above quoted from, was passed by the legislature and approved by the Governor on February 19, 1917; more than two years following the vote of the people upon initiative measure No. 3 and the proclamation of the Governor evidencing the adoption of that measure, but less than two years following January 1, 1916, the time of the taking effect of that act by its terms as expressed in § 33 thereof. The argument is, in substance, that the words, "two years following such enactment," in the above quotation from the seventh amendment to our constitution, mean two years following the time when an initiative measure, by its own terms, is to take effect; and that, since initiative measure No. 3, by its own terms, was not to take effect until January 1, 1916, it could not be constitutionally amended within two years from that date. We cannot agree with this view. The word "enactment," used with reference to the making of a law, may possibly, under some circumstances, be used in such manner with reference to some act to be done or duty to be performed in pursuance of its terms as to call for its construction as meaning "taking effect;" but we see nothing in the initiative provision of our constitution to

suggest any such meaning. The word "enactment," with reference to the making of a law, means, under almost all conceivable conditions, the exercise of the legislative power bringing the law into existence. This we think is true, whether such legislative power be the act of the people in making or amending their constitution, the act of the people in making or amending a statute, or the act of a representative legislative body in making or amending a statute. When the people or body possessing such legislative power have completely exercised their power in bringing the law into existence, the enactment of the law has become complete. Whether initiative measure No. 3 was completely enacted in a legal sense, when voted upon by the people in November, 1914, or not until the issuance of the Governor's proclamation evidencing the vote of the people thereon, is not necessary to decide here. That measure, in any event, became completely enacted not later than when the Governor issued his proclamation on December 5, 1914. We conclude that after two years following that date, in any event, initiative measure No. 3 would be subject to be constitutionally amended by the legislature. This, as we have seen, was done by the legislative amendatory act of 1917 here in question; hence that amendatory act was constitutionally enacted in so far as the question of time following the enactment of initiative measure No. 3 is concerned.

Contention is made in appellant's behalf that the superior court erred in putting him upon trial to answer a complaint different from that which was first filed against him in the justice court. On December 24, 1920, appellant was charged by the prosecuting attorney, by a complaint filed with a justice of the peace, with the simple offense of unlawfully having in his possession intoxicating liquor, as being committed on that day. This complaint was filed, apparently looking to a final

trial of appellant in the justice court; but before the case proceeded to trial on that complaint, the prosecuting attorney discovered, as he thought, that appellant had been previously convicted in the superior court for Spokane county of the offense of having an excess quantity of liquor in his possession. The prosecuting attorney thereupon filed another complaint with the same justice, charging appellant as in the first complaint, and also charging such previous conviction. This complaint was filed under § 32 of initiative measure No. 3, as amended by § 15 of the act of 1917, above quoted. The justice then proceeded, upon motion of the prosecuting attorney, to hear the cause as a committing magistrate, evidently being of the opinion that a conviction of appellant of such aggravated offense would call for the infliction of a punishment of a greater degree than a justice court had jurisdiction to finally adjudge. That hearing resulted in an order of the justice, made only as a committing magistrate, holding appellant to answer in the superior court. Thereafter an information was filed by the prosecuting attorney in the superior court, charging appellant with the aggravated offense as in the second complaint filed with the justice, upon which appellant was duly arraigned, plead not guilty, and was tried and convicted.

The argument seems to be that appellant had the right to be tried and finally adjudged guilty or not guilty in the justice court upon the first complaint filed therein; this upon the theory that that complaint charged an offense which the justice court could hear and render a final judgment upon. We fail to see in what respect appellant's rights were in the least prejudiced by the course pursued by the prosecution. Manifestly the superior court had jurisdiction over the aggravated offense for which the appellant was tried upon information filed in that court. The jurisdiction, power

and duty of that court to proceed to trial upon that information, we think, were not in the least lessened by the election of the prosecution to abandon its first complaint in the justice court and file a new complaint before the justice charging the higher offense, and inducing the justice to hear the cause only as a committing magistrate. Surely the abandonment of a prosecution which has been instituted looking to final judgment in a justice court does not militate against the right and power of the prosecuting attorney and the superior court to proceed, upon proper information filed in the superior court, to a trial of the accused for a higher offense of which the superior court has jurisdiction.

Contention is made in appellant's behalf which we understand to be, in substance, that the superior court erred in receiving in evidence a duly certified record of the superior court of Spokane county evidencing appellant's prior conviction as charged. The argument is addressed wholly to the question of the constitutionality of the concluding language of § 32 of initiative measure No. 3, as amended by § 15 of the act of 1917, above quoted, which is that such certified record of conviction "shall be sufficient evidence and proof of such previous conviction or convictions." It is argued that this provision is unconstitutional, upon the theory that it is an attempt on the part of the legislature to make such certified record of conviction conclusive proof of the previous conviction or convictions sought to be proven. We think, at all events, such argument is wholly without avail here. There is nothing in the court's instructions to the jury, nor elsewhere in the record, indicating that the jury was advised or told that such certified record of conviction was conclusive proof of appellant's previous conviction. It seems plain to us that as long as the jury were left free to find for or against appellant upon the question of his

previous conviction, including, of course, the question of his identity with the person who the record purported to show was previously convicted, no constitutional right guaranteed to him was invaded. The certified record of previous conviction was simply introduced as any other evidentiary fact, and the jury properly left free to weigh it as such. It may have been sufficient to prove such previous conviction, if appellant was identified as the one so indicated as being convicted; but the jury was not compelled, as a matter of law, to so find. This, we think, is all that the statute means.

Some errors are assigned upon the giving of the court's instructions to the jury. These questions, however, are presented to us in such manner as to make their disposition quite unsatisfactory in the light of the record before us. We may observe, however, that one or two of these instructions, especially that numbered 9, are somewhat unfortunately worded. We think it sufficient to here observe that, upon a new trial, the questions presented touching these instructions will hardly be likely to arise. Therefore we pass them without further comment.

We now come to a claim of error, made in appellant's behalf, which we feel constrained to hold must be sustained. It is that the trial court erred in admitting in evidence certain bottles of whiskey taken from the possession of appellant by the sheriff of Adams county without the authority of any search warrant, and at a time when the sheriff had no authority by warrant or otherwise to arrest appellant. On the day in question, appellant drove in an automobile from Spokane to Ritzville. The automobile being stopped on a street in Ritzville for a short time, and the sheriff seeing appellant occupying the driver's seat in it there, suspected that appellant had intoxicating liquor in his unlawful pos-

session in the automobile. The sheriff thereupon telephoned to his office at the court house and told some one there—presumably one of his deputies—to "get a search warrant for that car;" giving the number of the car. Immediately thereafter, without waiting for a search warrant, and not knowing when one might be issued, and not having any warrant for the arrest of appellant, and having no actual knowledge or visible evidence of the commission by appellant of the offense of unlawfully having intoxicating liquor in his possession, the sheriff stepped upon the running board of the automobile and commanded appellant to drive the car to the court house, at the same time covering appellant with a gun in a threatening manner, causing him to obey the command. In other words, the sheriff then and there arrested appellant and took possession of the automobile and all that was in it. They arrived at the court house some fifteen or twenty minutes later; when the sheriff took from the rear of the automobile a suit case containing the bottles of whiskey in question. In the meantime—just when is not made plain; but certainly some appreciable time after the sheriff had taken possession of the automobile as above noticed—some one at the sheriff's office had procured from a justice of the peace a search warrant to search the automobile, which search warrant was in the sheriff's office when he arrived there with appellant and the automobile. The bottles of whiskey in question were first actually brought into view from the suit case, and to the actual knowledge of the sheriff, upon the arrival of the sheriff and appellant at the sheriff's office.

These events, established beyond dispute by the state's own witnesses, we have felt the necessity of relating in considerable detail, to the end that the premise upon which we are to decide whether or not the seizure of the whiskey was unlawful, be made plain; since, as

we shall presently see, the lawfulness or unlawfulness of the seizure of the whiskey by the sheriff becomes determinative of the claimed right of the prosecution to introduce it, and the knowledge obtained by the sheriff in its seizure, in evidence in this case against appellant.

It is argued that, when the whiskey was actually brought into view upon the opening of the suit case at the sheriff's office, he then having in his possession a search warrant authorizing him to search for and seize the whiskey, his act at that time must be considered as a then lawful seizure of the whiskey in pursuance of his authority under the search warrant. The fallacy of such a view lies in the fact that the sheriff had, before any search warrant was issued, completely seized and taken into his possession the appellant, the automobile and all that was in it, including the whiskey; though he did not actually see the whiskey until after arriving at the court house. This was plainly an illegal seizure of the whiskey, in so far as want of a search warrant is concerned; and the possession of the sheriff could not be rendered legal by the coming into his hands of the search warrant which was issued after such unlawful seizure.

It is equally plain to us that the seizure of the whiskey was not lawful, as incident to appellant's arrest, as a seizure of evidence of crime incident to the lawful arrest of an accused sometimes becomes lawful; for even the arrest of appellant was unlawful, the sheriff having no warrant therefor. It is not pretended that appellant was suspected of committing a crime amounting to a felony; nor that he was disturbing the peace; nor even that the sheriff had any actual knowledge that appellant was then committing the misdemeanor of unlawfully having intoxicating liquor in his possession. We think the most elementary principles of the law of arrest render it plain that the arrest of ap-

pellant here in question was unlawful (2 R. C. L. 446-448; 5 C. J. 395); and that therefore the seizure of the automobile and its contents at the time of the arrest had no lawful support as incident thereto.

Before appellant entered his plea of not guilty, his counsel in open court demanded of the sheriff and prosecuting attorney the return of the whiskey seized by the sheriff, and asked the court to make an order accordingly; offering to then prove facts showing the unlawful seizure of the whiskey by the sheriff. This demand was refused, and the application for the order was by the court summarily denied without hearing any evidence. This move by appellant's counsel was, of course, to prevent the introduction of the whiskey in evidence against him upon the trial. Thereafter appellant plead not guilty and the trial proceeded; during which the whiskey was introduced in evidence by the prosecution, over the objection of appellant's counsel, after the facts showing the manner of its illegal seizure by the sheriff, as above related, had fully appeared by the testimony of the state's own witnesses. There is here invoked in appellant's behalf, in support of the contention that the trial court erred in admitting the whiskey in evidence against him, the guaranties of the Federal and state constitutions against unlawful search and the compelling of an accused person to give evidence against himself. These guaranties are expressed in the fourth and fifth amendments to the Federal constitution as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"No person . . . shall be compelled in any criminal case to be a witness against himself, . . ."

and are expressed in §§ 7 and 9, art. I, of our state constitution, as follows:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

"No person shall be compelled in any criminal case to give evidence against himself, . . ."

We thus quote from both the Federal and state constitutions to show that these guaranties are in substance the same in both, making the law upon the subject as expounded by the supreme court of the United States, presently to be noticed, a proper aid in our present inquiry, apart from the question of whether or not these guaranties as expressed in the Federal constitution are of themselves controlling of the rights of persons which may be drawn in question in our state courts under our state laws. The question of the introduction against an accused person of evidence the possession of which is unlawfully obtained in violation of his constitutional rights—as was the evidence here in question —has been the subject of extended discussion by the supreme court of the United States in several decisions rendered by that court in recent years. To review those decisions at length here would be to unnecessarily repeat the history of that long struggle for the security of personal rights in the English-speaking world which induced the adoption of these guaranties into the Federal constitution and into most, if not all, of the state constitutions of our Union, and the reasons so learnedly expressed in those decisions for giving these guaranties full force and effect. It seems to us enough for present purposes to take note of the last expression of that great court, found in its recent decision rendered February 28, 1921, in *Amos v. United States*, 255 U. S. 313. That was a prosecution by the government where-

in the accused was charged "with having sold whiskey on which the tax required by law had not been paid." The facts showing an unlawful seizure of the whiskey, and the holding of the court that the evidence so obtained could not be used against the accused in that criminal prosecution, are best stated in the language of the decision, as follows:

"After the jury was sworn, but before any evidence was offered, the defendant presented to the court a petition, duly sworn to by him, praying that there be returned to him described private property of his which it was averred the district attorney intended to use in evidence at the trial, and which had been seized by P. J. Coleman and C. A. Rector, officers of the government, in a search of defendant's house and store 'within his curtilage,' made unlawfully and without warrant of any kind, in violation of his rights under the 4th and 5th Amendments to the Constitution of the United States.

"Upon reading of this petition and hearing of the application it was denied, and, exception being noted, the trial proceeded.

"Coleman and Rector were called as witnesses by the government and testified: that, as deputy collectors of internal revenue, they went to defendant's home, and, not finding him there, but finding a woman who said she was his wife, told her that they were revenue officers, and had come to search the premises 'for violations of the revenue law;' that thereupon the woman opened the store and the witnesses entered, and in a barrel of peas found a bottle containing not quite a half-pint of illicitly distilled whiskey, which they called 'blockade whiskey;' and that they then went into the home of defendant, and, on searching, found two bottles under the quilt on the bed, one of which contained a full quart and the other a little over a quart of illicitly distilled whiskey. The government introduced in evidence a pint bottle containing whiskey, which the witness Coleman stated 'was not one of the bottles found by him, but that the whiskey contained in the same was poured out of one of the two bottles that had been found in defendant's house on the bed under the quilt, as stated.'

On cross-examination both witnesses testified that they did not have any warrant for the arrest of the defendant, nor any search warrant to search his house, and that the search was made during the daytime, in the absence of the defendant, who did not appear on the scene until after the search had been made.

"After these two government witnesses had described how the search was made of defendant's home without warrant either to arrest him or to search his premises, a motion by counsel to strike out their testimony was denied and exception noted.

"This statement shows that the trial court denied the petition of the defendant for a return of his property, seized in the search of his home by government agents without warrant of any kind, in plain violation of the 4th and 5th Amendments to the Constitution of the United States, as they have been interpreted and applied by this court in *Boyd v. United States,* 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. 524, in *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B 834, 34 Sup. Ct. 341, Ann. Cas. 1915C 1177, and in *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. 182, and also denied his motion to exclude such property and the testimony relating thereto, given by the government agents after both were introduced in evidence against him, when he was on trial for a crime as to which they constituted relevant and material evidence, if competent.

"The answer of the government to the claim that the trial court erred in the two rulings we have described is, that the petition for the return of defendant's property was properly denied because it came too late when presented after the jury was impaneled, and the trial, to that extent, commenced, and that the denial of the motion to exclude the property and the testimony of the government agents relating thereto, after the manner of the search of defendant's home had been described, was justified by the rule that, in the progress of the trial of criminal cases courts will not stop to frame a collateral issue to inquire whether evidence offered, otherwise competent, was lawfully or unlawfully obtained.

"Plainly, the questions thus presented for decision

are ruled by the conclusions this day announced in No. 250, *Gouled v. United States* (254 U. S. —, ante, 311, 41 Sup. Ct. 261) . . . The facts essential to the disposition of the motion were not and could not be denied; they were literally thrust upon the attention of the court by the government itself. The petition should have been granted; but, it having been denied, the motion should have been sustained.''

A learned and somewhat extended review of this question may also be found in the recent decision of the supreme court of Michigan in *People v. Marxhausen,* 204 Mich. 559, 171 N. W. 557, wherein the law is announced by that court in full harmony with the views of the Federal supreme court, above noticed; and wherein there is in like manner given full force and effect to the guaranties against unlawful search and the compelling of an accused to be a witness against himself, found in the Michigan constitution in substance as those guaranties are found in our constitution. That case involved the seizure of liquor in the home of the accused during his absence, without his consent and without any search warrant authorizing search for or seizure of such liquor. The prosecution failed because the evidence so unlawfully obtained, as it was ruled, could not be lawfully used against the accused.

We note that the case before us does not involve a search or seizure of whiskey in the home of appellant; but manifestly the constitutional guaranty that ''no person shall be disturbed in his private affairs, or his home invaded, without authority of law,'' protected the person of appellant, and the possession of his automobile and all that was in it, while upon a public street of Ritzville, against arrest and search without authority of a warrant of arrest, or a search warrant, as fully as he would have been so protected had he and his possession been actually inside his own dwelling; that

is, his *"private affairs"* were under the protection of this guaranty of the constitution, whether he was within his dwelling, upon the public highways, or wherever he had the right to be. Our decision in *State v. Jackson,* 83 Wash. 514, 145 Pac. 470, is in full harmony with this view of the law. The reason which supports that decision, it seems to us, is in substance the same as the reason which supports our conclusion here. Upon the trial of that case in the superior court, the prosecuting attorney, in the presence of the court and jury, and over the objection of counsel for the accused, made demand upon him for the production of certain documents in his possession, to the end that they might be introduced in evidence in support of the criminal charge upon which he was there being tried. This was held to be in violation of the guaranty of our constitution that "No person shall be compelled in any criminal case to give evidence against himself." Judge Chadwick, speaking for the court, quoted with approval from *McKnight v. United States,* 115 Fed. 972, as follows:

" 'To permit a demand to be made on the defendant in a criminal case, in the presence of the jury, to produce a paper or document containing incriminating evidence against him, is a violation of the immunity secured to him by the fifth amendment to the Constitution of the United States, providing that no person in any criminal case shall be compelled to be a witness against himself.' "

If it be the law, as it clearly is, that the prosecution has no right to make such a demand upon an accused in the presence of the jury before which he is being tried, such demand suggesting that what is sought will be incriminating evidence against the accused, how can it be said that evidence procured in an unlawful manner through the violation of an accused's constitutional

guaranty against unlawful search and seizure may be used against him, as was done in this case?

Because of the error of the trial court in admitting in evidence the whiskey so unlawfully taken from the possession of appellant, the judgment is reversed and appellant granted a new trial. The cause is remanded to the superior court for such further proceedings as shall not be inconsistent with the views herein expressed.

HOLCOMB, HOVEY, MAIN, and MACKINTOSH, JJ., concur.